L.D.R. v. Berryhill, number 181763. Thank you, Your Honor. May it please the Court, my name is Randall Forbes. I represent the Social Security, or the SSI disability claimant. I did not represent the claimant in the very first administrative hearing, but in all subsequent federal court and administrative proceedings after that, I did represent the claimant. Can I ask you something? If the Court affirms the ALJ's finding that the child became disabled at the start of second grade, would the Court need to reach the constitutional question? I mean, how would answering the constitutional question affect the outcome if the disability finding is upheld? Would the payment start any sooner, or would... If the newborn age group category did not receive proper attention or analysis because the judge under the present statutory and regulatory framework would not have felt compelled to do so. So, at a minimum, that age category would be open for remand if the claimant. Thank you. I'm not really sure how to proceed on this argument. It covers a lot of ground. All right, well, I'll start you off. Thank you. What statutory or regulatory authority requires the ALJ to conduct a separate analysis for each age group within each statutorily or regulatorily required, except that the regulations outline the age group categories. I can't cite specifically which ones outline them, but they're the regulations and the rulings that are basic to this child disability analysis. And by logic and also by the need to have meaningful district court review, it seems to be necessary. Well, how was LDR prejudiced by the ALJ's decision to void out the analysis? The reason I ask, okay, is because this is a very thorough decision that fully acknowledges the standards for each age group for each domain before considering and applying those standards to the evidence. I guess I have a different opinion of the decision. I think it's not necessarily a full analysis. It is a pretty comprehensive exposition of the facts, but the analysis of those facts is disorganized and I think ultimately the conclusions are incorrect. For example, it's obvious from the medical record that this child has suffered from chronic otitis media, multiple related pulmonary problems. The treatment has been consistent and the problems unrelenting. So it just appears to me mostly that the health and disability analysis, but that's just one of many of the problems that not addressing these issues, age group category by age group category and the domains within the categories. So most of that is specifically, I hope, explained in the brief. But ultimately, your honor, I think it's a matter of the readability of the opinion because that is a regulatory requirement. The opinion is supposed to be understandable by the claimants. Also, it goes to the issue of whether it can be Is the age group of newborns and infants relevant only if the court decides the constitutional issue in favor of the child? It appears that the application was not filed until the child was 18 months old. And so what is the relevance of evidence for that earlier period? I believe the earliest period, your honor, would only be relevant if the constitutional issue were reached in favor of claimant, which is also No, that's that's correct, your honor. I will reserve the rest of my time for rebuttal unless there are more questions. All right. On page 40 of the blue brief, what you said was in the SSI context, the parent is not a proper surrogate decision maker. What I meant by that is, obviously, the parent or the guardian custodian is the decision maker. But what I meant by that was there's no discretion if the parent fulfills their parental duties. The application has to be filed on the alleged onset date. There's no discretion as to why it should not be unless there were income and resource issues that were known. But from a medical basis, it must be filed on that basis. There's no discretion. And that differs from the adults, or at least the competent adult class, because the competent adult class can weigh all of the other issues personal to them as to whether they want to file. But with the child, the filing time always aligns up with the alleged onset date as to whether or not that is the appropriate thing to do. But why would it be unconstitutional for the regulation to assume that parents of disabled children have a strong incentive to apply for benefits as soon as possible? Well, I do think there is a strong incentive, but that doesn't always occur. I mean, applications are not always made. And I just couldn't come up with a rational reason why an application wouldn't be filed, and I couldn't come up with a rational reason why the government would not allow a child's application to be deemed filed as of the onset date. So I'll reserve the rest of her book. Sure, sure. I understand these conundrums. Sure thing. Good morning. Good morning. Yeah. May it please the court, Lou Hahn on behalf of the Acting Commissioner of Social Security. To begin with Judge Rovner's question, which is, does this panel need to reach the constitutional question? No, because here the ALJ thoroughly, adequately, reasonably explained the reason why she found that disability did not begin until August 1st, 2015. As Your Honor points out, this is a 28-page decision. The district court stated over 13 of those pages represented the discussion of the medical record. And in this case, Ms. Wagner has not been able to point out any factual errors that the ALJ made or any legal errors. Beginning with the age categories, as Your Honor pointed out, Ms. Wagner did not apply for benefits on behalf of her son until September 2009 when he was 18 months old. So the first age category of birth to attainment of age one would not apply. Those age categories found in 20 CFR 416.926A list the relevant age categories, which, again, looking at the ALJ's decision, she discussed within all six functional categories. There is no authority in the statute or in any of the regulations that would have required the ALJ to have made a separate factual analysis or have a separate discussion within each of those six categories with regard to each of the age categories. But it's very clear that the ALJ was aware of the three applicable age categories, which is older infants to toddlers, preschool-age children, and school-age children. And in fact, the ALJ found that when Ms. Wagner's son was a school-age child, about the age of seven and a half years old, that is when he became functionally equivalent to a listing because he had marked limitations in two of the functional categories. And those categories being interacting with others and caring for himself. And that date is very important because the ALJ thoroughly explained why it was that date, which represents the beginning of second grade. Prior to that, as Mr. Forbes pointed out, there is a robust medical record, but none of it shows anything that would be marked impairment. As of August 2015, however, beginning of second grade, Ms. Wagner and her son began seeing a clinical licensed social worker, Ms. Henry. Also, her son's second grade teacher, Ms. Helms, completed a teacher questionnaire in which she circled, for the first time among the teacher questionnaires, numbers four and five, which indicated serious or very serious problems in some of the areas of Ms. Wagner's son's behavior at school. So with that, also with the nurse's notes indicating that between August and December of 2015, there were over 25 visits to the nurse's office by Ms. Wagner's son, and he visited for reasons including injury, self-injury, bathroom accidents. It's very clear why the ALJ found that before August 2015, there was no evidence showing disability, but after August 15, there was showing a functional equivalence. So we have a partially favorable decision, which is very well explained and very well supported. What Ms. Wagner and her counsels arguing for this court to do, and made the identical arguments below in the district court, is for the court to reweigh the evidence and to come out with a different conclusion based on the facts. But as this court is well aware, and as many cases say, that's not the duty on appeal. The court is to look at whether or not the ALJ was reasonable in her assessment of the facts, and we maintain that she was. With regard to the constitutional issue, we set out in our brief all the reasons why it's very clear that the rational basis test should apply to the Social Security Act, and it's implementing regulations, and there is nothing unconstitutional about the SSI scheme as it applies both to adults and to children. What is the standard of review for deciding whether disabled poor children are a suspect class? On page 20 of your brief, you seem to suggest that issue is reviewed under the arbitrarian's capricious standard. Why isn't that a legal decision that we would review de novo? Well, Your Honor, this is the standard that's been set forth in a number of cases from the Supreme Court and from this court as well, because the agency is given the authority to take the act and promulgate regulations under the act. Those regulations have been reviewed under that arbitrary and capricious standard, which means, does it pass a rational basis test? And in the cases cited by both parties, that's the standard with which this court should look at whether or not these regulations have a rational basis in effectuating the intent of the act. And the intent of the act with respect to SSI, as we discussed, is to make sure that individuals who satisfy the requirements are able to meet basic needs, housing, accommodations, clothing, food, etc. And it's for those reasons that it's not retroactive. As the district court explained, it is going forward to make sure that people can meet the federal minimum standards. And the cases even cited by Ms. Wagner, in her reply, she actually no longer makes any arguments with regard to the actual ALJ decision at issue, but continues with the constitutional issue. In those cases, in looking at, for example, the case she raises for the first time on reply, the Dandridge case. Dandridge is a Supreme Court case from 1970. That case looked at a program that ended in 1996, but the assistance of family and children with child dependence. That case involved the state of Maryland capping for any family, regardless of the number of dependents, the benefit to $250. And the circuit court throughout those proceedings had held that that was a violation of equal protection. But the U.S. Supreme Court disagreed and said that it satisfied the rational basis test, that states can disperse those funds in the way that they see fit. And here, analogous, the Social Security Act and then the agency has decided for SSI, as it applies in this case to a child, is best dispersed if that child satisfies the requirements of disability only at the earliest, the month after application. And in this case, because it was a partially favorable decision, the agency determined that those benefits should start in August 2015 and no sooner. And that's because of the medical evidence that Ms. Wagner provided at the hearing. Ms. Wagner, who was represented by counsel, counsel who appears today, it was her burden to furnish all of that evidence showing that her son was disabled, as she alleged. She was given ample opportunity to, and that evidence really does not show any marked limitation until, again, the beginning of her son's second grade year. Unless the panel has any further questions, we ask that this court affirm the district court's decision. Thank you. I mean, thank you. If I could first address this idea that the idea that retroactive benefits provide no current help. I believe that's incorrect, because if you're living at a below subsistence level, that means you're declining health-wise, developmental-wise, so the compensation for that in the form of back benefits will help ameliorate that decline. I'm not sure that's a really valid argument. In a lot of these child cases, when the child gets to school, the problems are discovered or at least are better documented. In this case, we have documentation of the behavioral problems, and the behavioral problems have a direct connection to the medical problems. There's documentation of head-banging, there's documentation of persistent crying, and head-banging and persistent crying over periods of time seem to me just as serious a problem as those teachers would recognize in school. To the reply on the constitutional issues, the reason that Plyler v. Doe was brought up is because it was in the chain of cases that followed San Antonio v. Rodriguez, which the appellee brought up. I believe this case is that Plyler is on point, at least in the description of whether or not this is a class that should be recognized, and in the commonalities that the two situations pose. For example, Plyler talks about what is at stake, and in Plyler it was a public education for the children of aliens. Then in this case, what is at stake is the ability to live at subsistence level. In Plyler, the lack of education had an impact on potential future citizens, and in this case, the lack of a subsistence level income impacts health and development, and in some instances, the endangerment of survival itself. In Plyler, there is commentary that children should not be punished for the actions of adults, and in this case, in essence, children are being punished for the actions of adults, who often, through no fault of their own, are not gauging the medical onset date status when they attempt to file at different times. Even Plyler has implied references to the poor because Plyler uses the words cheap labor and underclass. In this case, poor is one of the descriptions of the group of children that are in this group. Plyler, at least based on my research, is still good law. If there's nothing else in this case, there is the judge's non-analysis of the newborn period. When you think about it, the whole system is kind of illogical. That's government, I agree. That's government at any level. I'm not going to disagree with you on that one. In essence, it forces the parents of potentially disabled infants to anticipate how bad the problem is going to get and to file really early. Quite frankly, if you'll indulge me with a personal anecdote, I'm a grandfather thrice over now, and it's not unusual for infants that are born a little early to have to undergo breathing or respiratory help in the neonatal intensive care unit. It can be kind of scary. When they get out and are back home, they may have breathing problems. At that point, you don't know whether this is a 12-month problem or a problem that's going to go away in four weeks. But the current state of the SSI laws suggests that in order to not waive any rights, you've got to go run to the Social Security office and apply in that four-week period. That's a real problem, and it's part of this puzzle that I have attempted to address. Thank you very much, Your Honor. Thank you very much, and thank you very much. The case will be taken under advisement.